This is Albert Ramos Ramirez. We'll hear first from Kristen Davidson and then Mr. Richard Durk. May it please the court. Mr. Ramirez's conviction for unlawful possession of a firearm turns on the constitutionality of the seizure and subsequent search of his jacket. But the district court didn't reach that analysis, holding that he had abandoned it because he tossed it over the locked fence of his mother's house, which was his family home. That was the error. This case raises and discusses a number of interesting issues, but I think that we can place them in two separate buckets. One bucket is, does Mr. Ramirez have an avenue for relief because he in fact did not abandon his jacket? And the other bucket, which many of the issues in the briefing discuss, I think fall into the category of are there independent grounds on which this court can affirm and there are not. Most importantly, relief is warranted for Mr. Ramirez because it was error to find that he had abandoned his jacket. There's not a factual dispute. He was stopped just as he was arriving in his mom's truck to his family home. As he was out of the truck and the cop initiated the lights, he tossed his jacket over the locked gate, which is a high fence with a no trespassing sign posted. He then engaged in the police officer. The basis for the stop was a slow roll through the stop sign. He was detained and he gave consent to search the truck. There was no contraband discovered. There was no evidence that criminal activity was afoot. But while he was detained for purposes of the traffic stop, the initiating officer, who could not reach the jacket behind the locked fence, asked another cop to get it. Only at that point, when the jacket was seized and subsequently searched without permission, did they find the firearm. Abandonment turns on objective factors that would indicate a voluntary decision to relinquish any privacy interest in the item search. A mere tossing of an item is not enough. A mere tossing of an item behind the locked gate of your family home, the destination to where you just arrived and to where presumably you're intending to go in, diminishes substantially the objectiveness that there was a voluntary relinquishment of a privacy interest. Can you help us with regard to his interest in the family home? He went there for breakfast every day or something like that? What is the relationship of him to the home? Apparently the girlfriend or wife or whatever doesn't have a good relationship, but I don't think that's the same as him and it's not clear to me whether he has a key, whether he can come in the house without knocking normally. What is the custom within the family and does that matter? It does matter and he was able to establish this in the course of the record. This was his family home. His handprints were in the concrete. He lived there up until I think 11 months prior to the hearing, but unfortunately he was incarcerated between that time, which is why he was not living in his family home. His mother is ill and he comes on, the testimony was, nearly a daily basis to check in on her, make her breakfast, care for her. He still has the Mohack address listed in public records as his place of residency. He receives mail there. So it's listed as his residency and he receives mail. Does he have a key? A key was not addressed. No one testified whether he had a key. I understand the girlfriend didn't have a key. And I do believe that is a separate issue. No one addressed a key. They addressed that he would often enter the house unannounced. He didn't always knock. If he had to knock, he could come in and out. Correct. And that's in the record, that he had freedom to come in and out. Some families, this may be unfortunate, may say, well you've been in jail, I don't want you coming in my house anymore. That's not the situation. He's not been banned from the house for any reason. He's allowed to come and go like a child, like an adult child in the home. Correct. It is in the record that he would come and go without announcement. His mother, I think it's in the record for a pretrial release, testified that he was welcome to live there again. He established, and it was unrebutted, that he would come. So what is the argument for abandonment? I guess they'll tell us. Well, I can only point to what the district court found, and it was the mere tossing of the jacket over the fence. But tossing itself... Putting something in your yard, if you see a ball out in the street and you throw it over the fence, you haven't exercised dominion to make sure you keep it. You haven't relinquished dominion. Correct. There are not a lot of cases dealing with abandonment, but the circuit does have cases where the factors that would show abandonment typically are throwing away while fleeing from the police. It is important if the throwing away is in a public space as opposed to a private space, or if there's been an express disclaimer of ownership prior to the search. Right, that happens sometimes with some suitcase at a border check or something. Oh, that's not my bag, and that's an express disclaimer because there's something bad in the bag and they know already. But this is not that. Is there any evidence in the record that his personal belongings have been given away to goodwill or sold by his mother when he's left them there at the house? That is not in the record. What we do know is he gets personal mail there. Okay, so she's not throwing it away or saying, oh, well, he's abandoned the mail because he doesn't live here. The mom is not throwing away the mail or saying it's not his. The record is silent as to anything along those lines. Well, you can talk about whatever you want, but I would be interested in the alternative reasons. Before we go to the alternatives, can we talk about the Colbert case? Please. How do you—what are your—I mean, you're familiar with that decision. How do you deal with it? Well, I think Colbert guides what factors a court looks at to find abandonment, and those factors are not here in this case. Is your point basically that your client, in a sense, literally abandoned the property, right? I'm not trying to trap you. I'm just saying literally in the sense of he got rid of it on his body. Your point is he's not intending to relinquish legal possession. He wants it back. Correct. What do you make of the fact that Colbert specifically makes clear that we don't follow property law principles? But that's not—so in other words, as a matter of property law, he may not have— if I were to take it, he could probably sue me to get the property back. But I understand from our admittedly older en banc ruling, but presumably still presidential, is that this is not a property law analysis. This is more of an expectation of privacy analysis. I think that's correct, and it was because of the recent Richmond case that that seemed prudent to cover both privacy interests and property interests. But there is a privacy expectation in a jacket. I think when a court finds— Any more than a suitcase? I'm sorry, a briefcase? I think briefcase was what was at issue in Colbert. I think in this circumstance— I guess what I'm wondering is why isn't Colbert—as an original matter, I might be at least intrigued by your argument. I'm wondering if we're foreclosed by precedent under Colbert. No, because Colbert is highly distinguishable. It was not an item disposed of in a public setting. He did not walk away in a public—down a public street away from the property. I think Colbert probably would have been decided differently had the person placed the suitcase down on the sidewalk and merely stepped in front of it, as opposed to placing it on the sidewalk and walking in a different direction, away from the property and away from the cops. I think that's because if you're standing in front of it, you're exercising dominion over the thing as clear to any observer. I think so. Why isn't this case, in that respect, why isn't this case more like Colbert in the sense that from an officer's standpoint, I assume they had no reason to believe that this was property he had access to. He's putting it somewhere where he can't get it by all public indications and then walking away. Why isn't that quite similar to Colbert? Well, the officer knows that he's—Mr. Ramirez is driving his mom's truck. The truck is registered to that property. And the officer also knows that many people live there because there's a rental arrangement out of some of the rooms. So there is enough knowledge for the officer to know that whoever's arriving in that truck that's registered to that property, slow rolling through a stop sign into the driveway, has an intent of reaching that location as its destination. Okay, so your point is the officers either knew or at least reasonably should have known that by throwing the jacket where he did, it was not putting it in the public domain but rather actually reserving it to an area that he had exclusive access to. Yes, and you can strongly point your finger in the record based on the fact that they were familiar with that property. They knew the truck was registered to that property and they knew that multiple people lived at that property. Had they seen his driver's license at that time that had that address on it? I will have to double-check that. The immediate lookup in the documents were for a different address, but he does have some other DHS records. So you don't know if they'd seen any records at the time before they retrieved the jacket? Correct, other than a quick lookup on the cop car. But Judge Ho, I want to address one of your questions about whether or not a jacket could be seen as a suitcase. And I think in this context of this case, it's more analogous to a briefcase than, say, for example, when a person is wearing a jacket because of the different types of terrorist precautions that can be in place if the garment is actually being worn. But a garment has pockets and pockets carry things. And because it was separate from Mr. Ramirez, I think the jacket in this context is like a suitcase in Colbert, and this case is distinguishable from Colbert. Colbert instructs us why this case is in need of relief because it was not disposed of in a public setting. There was no express disclaimer. There was no walking away from the situation or attempting to flee. So why don't we—apologies for delaying you— why don't we switch to the alternative basis? Because it seems to me that if he had not discarded the jacket, then certainly they could have searched him as incident to arrest for public safety. Why is it, if anything, the fact that he's discarding it when the police arrive creates its own suspicion, doesn't it? Not based on what they knew. Perhaps a hunch, but nothing more than that. Well, just as a common-sense matter, though, if a police officer, in good faith, is obviously approaching somebody trying to detain them and the person's reaction is to immediately discard a part of their clothing, isn't it natural to think that there's something about that piece of clothing that they don't want the police to see? Not based on this record. And, you know, it is notable— Why do you need anything more than what I just said? Well, the context for the stop matters. It was not a high-speed chase. It was not evidence of something more serious. I mean, traffic violations are a public safety matter, but it was a slow roll through the stop sign at an intersection where it's difficult to see, and it was a slow roll into the destination. There was no evidence— How does that cut? In other words, what you're saying is it's just a normal, ordinary traffic stop. In that case, you normally don't have people discarding clothing. You just have them sit patiently in their car. Well, I think the timing is also interesting, that he's arriving— Mr. Ramirez is arriving at his destination and is already out of the truck when the officer arrives and is initiating, and it is more the case that it's a simultaneous effort. But someone comes to their— But, I mean, is it ordinary behavior to walk up to a fence and throw your jacket over the fence? I mean, again, frankly, I don't care whether it's your property or your mom's property or a stranger's property. That's not normal behavior, is it? I think it's— There's no reason to suspect criminal— Let me unpack that. There are plenty of— Let me help you. I agree that just in the norm, if I just do that randomly, you don't immediately assume I'm a criminal. But if you do it in response to a cop coming after you— There was no other evidence that criminal activity was afoot. Thank you. Mr. Durbin? Good afternoon. May it please the Court, Richard Durbin for the United States. I don't know what those other independent grounds for affirmance were. I think that, as I see the issues, the first is, did he abandon the jacket and his expectation of privacy in the jacket? And then where he abandoned it, did he have some expectation of privacy there that protected against a police search based on it being his childhood home and his mother having lived there? The first question as to the jacket, I don't get an argument that he didn't abandon it. He got out of a truck that he had custody and control over. If he was trying to put it up for safekeeping, he could have left it right in the truck. But he didn't. He didn't hang it up. He wasn't putting it away somewhere. He got out of the truck, out of the line of the officer, and threw the jacket quickly over the fence. He was distancing himself from it. He was getting rid of it as quickly as he could. But he was also distancing it from the police officers, right? Yes, he was. It's not like Colbert where you're putting it in the public domain and then walking away as quickly as you can. This is him maybe not secreting it, but he's putting it out of the officer's hands. They have to trespass or have a viable search. It's often the circumstance of abandonment, is to get it away from you and maybe out of the officer's sight. We cite cases where somebody is being pursued and they abandon the drugs, hopefully out of the officer's sight, but it's also abandoning it to get it out of their possession, out of their custody. I just don't know if you're abandoning it at all. You have it broken down into two parts in the way you addressed it, that there's some initial abandonment and then some subsequent taking possession of it at your family home. But maybe the fact that you're depositing it at your family home means that it was never abandoned to begin with. I mean, what if he was carrying a football and he threw it over the fence? Would that be abandoning that football? It depends on the circumstances. If he was manifesting an intent to relinquish his custody over it, his dominion over it, and his privacy interest in it, I would say yes, that can be abandoned. But is that abandonment? Saying I'm going to take it, put it in my house, either anywhere in my house or outside of my yard. Judge, I take the exception. It's not his house. It's his mother's house. He lived several blocks away with his wife. You asked a question about a key. His wife had no key. Well, they don't like her. Well, they don't like her, but he's there 45 minutes and nobody comes out to say what's going on, are you okay? She might be sick in bed. We don't know. Somebody else came out. Okay. Somebody else had come out to see the wife according to the video. So there were people in there besides just the mother and that he may be able to occasionally enter that house without knocking and other times with knocking, and that's what I understood the mother to say, is sometimes he knocks, sometimes he doesn't. He comes almost daily? Well, she said he comes and feeds her breakfast, and I don't know if it's daily or not. I don't think the record's that clear, and it's his obligation to establish he's got an expectation of privacy. Let's say I'm an adult and I am riding my bicycle, and then I place the bicycle on a relative's property. So it's on the private property side of the line. Have I abandoned it? Under those circumstances, if that's all the facts, I don't think so. Is this case an even more clear argument? If you're riding a stolen bicycle. No, no. Well, there's no allegation that Jack had stolen, so I'm not sure why that's true. My point is I literally ride my bike and I decide I'm tired, I want to do something else. All I do is I place the bike on the property of my relative, and I think you've said that would not be abandonment. That alone probably does not manifest an intent. Here, isn't there a slightly more extreme version? Here it's throwing it over a gate. Let me ask you another hypothetical. If he had opened the door of the home and put the jacket in the home, I assume you would agree that's not abandonment. I think that's a different case. Okay, right. Why is the fact that, so we've got the opening the door and putting the jacket. You agree that's not abandonment. You've got me placing my bicycle on the property. That's not abandonment. Why is this different? Because he gets out of his truck, stopped by the police. He knows what he's got in the pocket. He's trying to distance himself from it. He takes it off, throws it. He tosses it. He doesn't even give much regard to where it lands. It ends up landing on top of a garbage bin. I'm not sure that that's where he is intending to do it. I think all of that supports. Are you suggesting he wasn't aiming for the mom's property? No, I'm not saying he wasn't aiming for the mom's property. So it's agreed he was aiming for mom's property and, I assume, over the fence. Yes. Just not necessarily the particular. Well, I think he probably wanted it farther so that it would be in the darkness and the police wouldn't see it. But it went over the fence. Then why, if that's true, that seems like it's not abandonment. It's concealment. He's trying to get it. I agree with you. He's trying to get it away from himself. No question about that, which is why I think you probably win on alternative grounds, to be clear. But just as a technical matter, why is this abandonment as opposed to trying to keep it away from the cops? Well, I don't know why it can't be both. I mean, I don't know why he can't have both of those intents at the same time because he insists afterward, it's not mine, it's not mine. And we argue, well, that's some evidence of what his intent was at the time that he told us. I'm glad you brought that up because I did want to nail that down. You got in the record that he did not. This was after the search takes place, though, right? Yes. Well, before the search, he's being pat—there's a pat down at the hood of the pickup. You're saying he disclaims any possessory interest in the jacket. That does not take place until after the search? That's correct. That's correct. That's after the officers find the gun. But I still think that there's another issue in there, and that concerns even if he has an expectation of privacy in the home as a visitor because he grew up there and his mother lives there and he visits her there, Phillips suggests that that does not necessarily give him an expectation of privacy over every part of the property. And what we're talking about here, there's a fence. I don't know how many feet it is. It's not the pickup length from the curb. And inside that fence is the trash receptacle. I think it's a recycling—sometimes called recycling, sometimes called trash. And the jacket ends up on top of that. Does he have an expectation of privacy that goes from the home that extends to that? And I would suggest that no, he doesn't have an expectation of privacy there. It's a diminished expectation in the first case. It's arguably in the curtilage, but that's not what his relationship is to the house, at least so far as what he has shown. What he has shown on the record is— Can we go back to my bicycle hypothetical? I'm sorry? Can we go back to my bicycle hypothetical? Okay. I think you said that there it would not be abandoned. Well, based on just what you tell me, I don't think so. Right. So if the bicycle had some compartment with a zipper, I think you would say the police— that would be a search if the police took this bicycle that's on a relative's property and opened up the compartment to look. That would be a search. If he has an expectation of privacy in—I'm assuming that— I'm wondering what's the difference, I guess. Placing a bicycle on the private property versus placing the jacket on private property. He didn't place the jacket on private property. What he did is he took it off as quickly as he could, and he tossed it to get away from it. If he had placed it, it would be—I'm not sure I see that distinction. Placing, it's a search, but throwing, it's not? Are you putting the bicycle on the property with an intention to relinquish your interest in it? And what I'm suggesting is on the facts of this case, he was doing it with the intention of relinquishing his interest. That's what Colbert says, is that it's a matter of intent. Could the district court infer from these circumstances that that's what his intent was? Well, I think you may be placing the rabbit in the hat because isn't the whole point we're trying to figure out from the facts what a reasonable intent we can infer? Yes, and I'm saying that the facts that you can infer it from is he throws it off as quickly as he can. He tosses it and ends up on the garbage can. He puts himself between the officer and it, and then when the officer says do you have any weapons on you, he says no. Let's say we've got, back to my bicycle hypothetical, I'm a strong person and I can throw the bike over a fence. Is that different somehow? What's your intent? What's the evidence of your intent? I'm giving you the same thing. Look, at the end of the day, we don't know his intent other than asking him. We have to infer from the facts. I understand, and what I'm saying is the inferences are fair for a couple of reasons, and part of the reason is he could have left the jacket in the truck. All he's trying to do is put it up so that it's secure. He can leave it in the truck. In fact, if he had left it in the truck, the only way to get it back. Okay, but he doesn't have to. He has other options. He doesn't have to, but he's not hanging it up. He's not putting it in a closet. He's not taking it inside. Oh, he's putting it in the same place I put my bike. Well, not exactly. Putting your bicycle someplace outside of the residence is what you do with a bicycle, but you don't usually do that with your jacket. You don't go home and take your jacket off and throw it over the fence. You go into the house, and you hang it up, or you drape it over a chair, or you put it on the table, or whatever it is you do. He wasn't doing that. He was manifesting his intent to get away from it so that it wouldn't be associated with him because he was hiding the gun, and that's what his whole purpose was, and then he insisted over and over again, It's not my jacket. It's not my jacket, boss. I didn't have a jacket. I'm just wearing this shirt in the 60-degree temperature. Is what he said after the fact pertinent, and what is the case law on that? I think the case law I've got is Kennedy. We cite that, and in that, the circumstances were that was at a checkpoint, if I recall, and the defendant denied ownership of a suitcase that was in the vehicle, and the court points out he denied it before the search, and he denied it again after the search, and the court points out he again denied it during the trial. That's not the abandonment itself, but that is evidence, I think, that's relevant to what his intention was. Did he say, That's not my jacket, or did he say, That's not my gun? He said, That's not my jacket, and I think he's – I don't – it's in our brief. I can't remember, but he said it's not – I know he said it's not my jacket. What if he would have left it in the car and shut the garage door because the stop was pretty near this place and then come out and said, Officers, how can I help you? What then? So he's left it in his pickup truck. He's left it in his mom's truck in her garage that he's pulled into and shut, just like the fence is shut. I wouldn't argue that he has abandoned the truck because he's put it in a place to put a truck, and he's walked out to confront the officers. So it's all because you're not a neat person if you put your jacket in the backyard rather than hanging it up in the closet? No, it's not, Judge, but it's a question of what inferences could the district court properly draw from those circumstances. I think that it's much more reasonable to say that he was trying to conceal it from the officers, and so can you make an argument as to why that would give you – why that would render the search appropriate? The seizure of the jacket? Yes. Because I think it's the same evidence proved that he was relinquishing his interest in that property. What if he's not relinquishing? He's trying to still keep it, but he's trying to keep it covertly away from the police. Well, when he says it's not my jacket, I wasn't wearing a jacket. I didn't have a jacket. Assuming that we – just argument, though, just humor me – that we do not believe, and we may believe, that he abandoned, but instead we believe that he was trying to secrete it in a safe place until he could retrieve it later when the cops were gone, the police officers were gone. Was that a legitimate search then? I don't know what evidence there is that that's what his intention was. Okay, can you – that's a hypothetical. I understand, but you hit me with these hypotheticals and you nailed it. What now? That's a hypothetical. Is it a good search if he's trying to keep it from the officers but still be able to go back and retrieve it later? Yes, I think it is. Why? It's the same type of circumstance as somebody who is running away from police and is tossing out their drugs and tossing aside their – No, he's not tossing them on the side of the road that anyone – that they could get spoiled or a dog could come around. He's putting them in a locked, safe place where he knows where it is that he and his family have dominion over. Just to be – just to be clear, are you saying that's a search but it's good or that it's not a search at all? Which? Judge Elrod's hypothetical. I'm just trying to help you. No, no. I think you meant to say that it's not a search at all. I may or may not agree with you. He said it was a good search. That's why I asked the follow-up. So I'm not trying to put words in your mouth. Right. Help. You have my hypothetical. So it's – your hypothetical is he's – his intention is to throw it so that he can come back to it later and the police won't find it now. Do I have that right? Yes. Yes, and I think that that's a question under the circumstances of this case. Could you also infer that he was also relinquishing his interest in that property? And I think that the district court could draw that inference. I don't think it's a mistaken inference. Okay. Assuming, arguendo, that that is not a theory available that he's relinquishing. And, in fact, he is trying to not relinquish it so that he can for sure get it back later. So under that hypothetical, is this a legitimate search or not a search at all so that the actions of the officers were constitutional? So if you've got evidence that shows that his purpose for doing that was solely to hide it from officers and come back for it later, would that be abandonment? No, it's not abandonment. But is it any legitimate theory? I'm trying to see if you have any legitimate theory if you don't have abandonment. Well, I mean, we haven't argued it. I mean, there was . . . Okay. You've only argued abandonment. So if we don't find abandonment, do you lose? Well, the district court was mistaken. I think it goes back to the district . . . I want to make sure I understand because I'm a little bit confused. Let me start with this. I think Colbert is a potentially helpful case to you, potentially. Opposing counsel has suggested a possible distinction. In Colbert, the person was fleeing the briefcase but left the briefcase on the public sidewalk. Right. If this were a public sidewalk case, you would win. Opposing counsel is saying it wasn't left on a public sidewalk. It was left over a fence onto private property. So my question to you is do you have a Colbert-like case but rather than on public property, the item was left on private property? Well, I think that what comes closest is probably Phillips. And Phillips was a case where the defendant had access to the property. And what he did is he hid his dope inside a shed that was in the back. And clearly for the purpose of going back and getting it at some point because he had stashed it there before the police came. And pardon my ignorance, you're saying that our court held that that was not a search at all? Because he did not have the privacy in the shed. That although he was a regular— Even though the shed was on his own private property? He was a guest on property. Okay, so it was not—it was private property. It wasn't his private property. It wasn't his, but this isn't Mr. Ramirez's— No, no, I understand. I understand. I'm not fighting you. That's why I say I think that— It is somebody's private property but not his. Correct. So the police theoretically can't go onto this private property without justification. But nevertheless, our court found in Phillips that that constitutes abandonment. That's correct. Well, and they also found that—in addition to that, they also found that he didn't have an expectation of privacy in the shed, whatever his connection to the home was. And what he claimed was he was a longtime friend with the homeowner, and they went on vacations, and it was like a relative, and he had stashed his stuff in the shed. And the court said he doesn't have an expectation of privacy in that shed. And that's what I'm saying as sort of an alternative is for the top of this garbage can that's at the front of the property, in front of the house line, at that fence line, he didn't have an expectation of privacy there. And the police could have just taken it. Whether or not he had abandoned it, I think the police could have taken it because he didn't have an expectation of privacy in that location where the search occurred. Did I answer your question, Judge Elrod? I made a valiant effort to answer my question, and I appreciate it. I'm not trying to evade it, but I really think that the circumstance—the question is, is there sufficient evidence for the district court to have made the finding and made the conclusion that he abandoned? And I think that there is that. We don't have your hypothetical because while that might have been part of his motive and part of his intention, the district court also could find from these other things that he was relinquishing his interest in it. He was getting rid of it. He told the officer over and over again, it's not my jacket. I don't have a jacket. I didn't wear a jacket. I just wore this shirt. And he did say that. And I think all of that evidence is that it was his intent. In the case of the shed, can you remind me, how did they get on the property to search the shed? I don't recall. Because didn't they have to get permission? They can't just go and search the shed. Well, I think that as to—I just—I don't want to misrepresent— I'm assuming the point would be that whatever—whosever rights the police may or may not have violated, it wasn't the defendant. It wasn't the defendant. That's all that matters. That's right. The property owner can sue for trespass, but that has nothing to do with the court. That's correct. That's correct. What if the records show that he regularly took out the garbage? Well, if the records show that and if he'd made his obligation, we might have a different case. But he's got to show—he's got the burden of showing he has an expectation of privacy. And he didn't show that. He showed— Well, my son-in-law always takes out the garbage when he comes into my house for any reason because he's very helpful. Well, that's great. And I still get—I still get mail at my house from my parents, and they're both deceased, and they don't have an expectation of privacy. I mean, we can take all of those circumstances, but he didn't—he didn't show that. You can have a connection to a place without having an expectation of privacy. Absolutely. Absolutely. And he may have had an expectation in the home, but that's not what we're talking about. Because you think the yard is materially different than the home. I think a garbage can at the front of the property is very different than a home as far as a visitor is concerned. Not the homeowner, but as far as a visitor. And he was simply a visitor. And the last thing I'll say is he was not an overnight visitor. Thank you, Mr. Durbin. Thank you. Exceeding your time. You have five minutes. You want to tell us your take on Phillips? Yes. That's where I was going to start, Your Honor. The basis for expectation of privacy in Phillips was alone based on the claim there was a familial relationship. So just this relationship alone. The shed— Relationship between the defendant and the owner of the property. And the property itself. Correct. Which sounds kind of like what you're talking about here, isn't it? But there was even less in Phillips. Because the shed itself was locked, and only the owner had the key. And the only use of the shed by the defendant was— How does that cut? I'm sorry? That sounds like it's an even more secret and hard for the police to get to place. In other words, it's a better strategy for hiding it, and yet there's still no expectation of privacy, it sounds like. Meaning the defendant was not authorized to go into the shed. But nor the police. I suppose the two things are going to go together, right? The harder it is for the person, the harder it is for the police also. I cannot remember off the top of my head whether or not there was a warrant, or there was consent by the property owner to search the shed. It was not—the point is the defendant was not really authorized to be in that shed. Not only were they simply using it as a commercial transaction to traffic drugs, but only the property owner had a key and kept it locked. It is not the case that the defendant in that case had access to that shed or used it in other ways. What's your best evidence in the record that he had access to that yard area? In the record, it's— It was an expectation of privacy in the yard area. Record site 402-403 is where he establishes on the record the various ways in which he's interacting and has sufficient connections with the property to develop a type of privacy interest that society would acknowledge. The pictures show—this is not a large property. This is a very small property, and it's surrounded by a very high locked fence. Even in the pictures that the government produces, I believe, on page 4 and 5 of their brief, you can see how close the locked fence is to the threshold of the home. This is a small property to which he— There's a manifestation of keeping the public out of the property. This is a high fence, and it's locked. The fact that he wants to keep his jacket away from the cops, absent any other reasonable suspicion that criminal activity is afoot, and there wasn't any, it's not unreasonable why a person wouldn't want an item subject to search or rummaging. There are any number of legal and legitimate reasons to keep your item away from the police. So that could break either way, absent any articulable suspicion that criminal activity was afoot, and there wasn't. Any possible entryway into reasonable suspicion diminished as the stop proceeded. Judge Elrod, you asked whether this was a good search. It's not. The presumption is a warrantless seizure and search is unconstitutional but for an established exception, and we've walked through why the record does not support the possible Fourth Amendment exceptions in this case. As for whether or not there was a jacket disclaimer, Kennedy is highly distinguishable because from the very moment an inquiry was made into the suitcase, there was a denial. That's not mine. The fact that the defendant also said at the trial after the fact is simply consistent with the fact that from the very beginning, the first inquiry into the suitcase, that defendant was expressly disclaiming ownership. In this case, it is not the jacket that the cop even makes the inquiry of. He makes zero inquiry into the jacket until after he grabs it and finds the gun. And then he says, this is on the government's brief, page 17, they restate the exchange. He says, sorry, Mr. Ramirez says, what happened? And Officer Copeland says, I found your gun. Nothing is mentioned about the jacket until much later. So it starts with an exchange that never elicits a type of express disclaimer of ownership. And if there are no more questions, thank you very much. Thank you very much. This case will be submitted.